[No. 27003. Department Two. June 29, 1938.]

NANCY BANKS, *a Minor, by W. R. Banks, her Guardian ad Litem, Respondent,* v. SEATTLE SCHOOL DISTRICT No. 1, *Appellant.*[1]

[1]Reported in 80 P. (2d) 835.

*B. Gray Warner* and *Patrick M. Tammany,* for ap-, pellant.

*Oscar A. Zabel,* for respondent.

BLAKE, J.—Plaintiff brought this action to recover damages for injuries sustained while operating a printing press maintained by defendant for the use of students in connection with a regular course of instruction. From judgment entered upon a verdict in favor of plaintiff, defendant appeals.

The machine was what is called a foot press, the power for its operation being supplied by the pressure of the operator's foot upon a treadle. The press proper is mounted upon four standards, between the front two of which there is a crossbar. The treadle extends under this crossbar and, when in operation, comes to within an eighth of an inch from it. Upon the treadle, and at a distance of nine and one-fourth inches from the crossbar, is a foot plate, upon which the operator puts his foot. This foot plate is three and three-fourths by eight inches, and has a heel hold. While operating the machine, respondent's foot slipped and was caught between the treadle and crossbar.

Two charges of negligence were submitted to the jury: (1) Failure to mount the press so as to give greater clearance between the treadle and the crossbar; and (2) failure to equip the treadle with a guard which would prevent the operator's foot slipping between it and the crossbar.

On behalf of respondent, a printer, with seven years experience with various kinds of presses, including those operated by foot power, testified as follows:

"A. On inspecting the treadle I found that the treadle did not have the proper clearance from the cross-member of the frame; that it came up within one-eighth of an inch of the cross-member of the frame; that if it had been so properly mounted—say 2 by 4's were put under the legs and the connecting rod between the crankshaft and the treadle were screwed down and lengthened, there would be no opportunity for anybody having any member of their body caught in between the treadle and the cross-member. But the clearance was not proper between the treadle and the cross-member of the frame. Q. Was there any other way to provide a safeguard for the press? A. At the time that I saw the press, the press had a safeguard on it . . . Q. Do you consider it practical to have a guard on this type of treadle? A. Yes, I would consider it practical."

■ Appellant's principal contention is that this evidence is insufficient to make out a case of negligence for the jury. The argument is predicated upon the principle stated in 45 C. J. 660, and approved in *Ullrich v. Columbia & Cowlitz R. Co.*, 189 Wash. 668, 66 P. (2d) 853, that:

"The question of negligence must be determined according to what should reasonably have been anticipated, in the exercise of ordinary prudence, as likely to happen."

Measured by this rule, we think respondent's evidence was amply sufficient to take the case to the jury. What with keeping his hands from getting caught by the platen press, the operator can hardly be expected to think about keeping his foot from slipping between the treadle and the crossbar. That such a mishap might occur, and should be reasonably anticipated, we think is sufficiently manifest from the mere descrip-

tion of the machine—particularly when operated by novices of the age of respondent. Since, under respondent's evidence, the injury could have been avoided by a proper guard, or by setting the press up in a manner to give sufficient clearance between the treadle and crossbar, the question of appellant's negligence was for the jury. See *Howard v. Tacoma School Dist. No. 10*, 88 Wash. 167, 152 Pac. 1004, Ann. Cas. 1917D, 792; *Bowman v. Union High School Dist. No. 1*, 173 Wash. 299, 22 P. (2d) 991.

Appellant assigns error upon the denial of its motion for new trial. This error is predicated upon the admission of evidence to the effect that, subsequent to respondent's injury, appellant put a guard on the treadle, designed to keep the operator's foot from slipping between it and the crossbar. This was not admitted as evidence of past negligence, but merely in support of respondent's contention that the machine could be practicably guarded. The court so instructed the jury. The issue being in the case, the evidence, so limited in scope and purpose, was admissible. *Erickson v. McNeeley & Co.*, 41 Wash. 509, 84 Pac. 3; *Thomson v. Issaquah Shingle Co.*, 43 Wash. 253, 86 Pac. 588; *Lindblom v. Hazel Mill Co.*, 91 Wash. 333, 157 Pac. 998; *Wheeler v. Portland-Tacoma Auto Freight Co.*, 167 Wash. 218, 9 P. (2d) 101; *Hatcher v. Globe Union Mfg. Co.*, 178 Wash. 411, 35 P. (2d) 32.

Appellant raises another question, which we shall not discuss, for, as said in its brief, the point made is "not of sufficient materiality in itself to justify a new trial."

Judgment affirmed.

MILLARD, MAIN, and BEALS, JJ., concur.

ROBINSON, J. (dissenting)—I find great difficulty in arriving at the conclusion that the defendant school

district should reasonably have anticipated that an accident, like the one complained of, might happen. If the decision had been mine alone to make, I would have held, as a matter of law, that the school district was not negligent. But with regard to that question, I cannot, with propriety, urge my personal opinion as against that of an overwhelming majority. I will go so far, however, as to assert with confidence and conviction that the question as to whether or not there was any negligence shown on the part of the defendant school district was, at least, so close, that the jury might reasonably have answered it in the negative. This being the case, the appellant is entitled to a new trial if the record reveals any error which would conceivably have operated to its prejudice.

In my opinion, the court erred in admitting evidence that the defendant put a guard on the treadle after the accident, and that the error was harmful and prejudical. The rule is that evidence of precautions taken, warnings posted, or guards installed after the happening of an accident is not ordinarily admissible in actions like the case at bar. For this rule there are very compelling reasons. Lord Chief Justice Coleridge, in *Beever v. Hanson*, 25 L. J. Notes of Cases, 132, said:

"Now a perfectly humane man naturally makes it physically impossible that a particular accident, which has once happened, can happen again, by fencing or covering, or, at any rate, making safe the particular thing from which it arose. That, however, is no evidence of, and I protest against its being put forward as evidence of, negligence. A place may be left for a hundred years unfenced when at last someone falls down it. The owner, like a sensible and humane man, then puts up a fence, and upon this the argument is that he has been guilty of negligence, and shows that he thought the fence was necessary, because he put it up. This is both most unfair and unjust. It is making

the good feeling and right principle of a man evidence against him."

Previous to that declaration, it had been said by an American court in *Terre Haute & I. R. Co. v. Clem*, 123 Ind. 15, 23 N. E. 965, 18 Am. St. 303, 7 L. R. A. 588:

"True policy and sound reason require that men should be encouraged to improve, or repair, and not be deterred from it by the fear that if they do so their acts will be construed into an admission that they had been wrong-doers. A rule which so operates as to deter men from profiting by experience, and availing themselves of new information has nothing to commend it, for it is neither expedient nor just."

And even before that case was decided, it was said, in *Morse v. Minneapolis & St. Louis R. Co.*, 30 Minn. 465, 16 N. W. 358, which appears to be the leading American case on the subject:

"But, on mature reflection, we have concluded that evidence of this kind ought not to be admitted under any circumstances, and that the rule heretofore adopted by this court is on principle wrong; not for the reason given by some courts, that the acts of the employes in making such repairs are not admissible against their principals, but upon the broader ground that such acts afford no legitimate basis for construing such an act as an admission of previous neglect of duty. A person may have exercised all the care which the law required, and yet, in the light of his new experience, after an unexpected accident has occurred, and as a measure of extreme caution, he may adopt additional safeguards. The more careful a person is, the more regard he has for the lives of others, the more likely he would be to do so, and it would seem unjust that he could not do so without being liable to have such acts construed as an admission of prior negligence. We think such a rule puts an unfair interpretation upon human conduct, and virtually holds out an inducement for continued negligence."

The rule is observed in the courts of England and Canada, and in the courts of nearly all of our states. It was early adopted in our own state in the case of *Bell v. Washington Cedar Shingle Co.,* 8 Wash. 27, 35 Pac. 405. In that opinion the court said, in part:

"That it is not competent for the plaintiff in actions of this kind to show that such changes have been made is well established by the authorities in this country. That such is the fact will sufficiently appear from a quotation from a single case. The supreme court of the United States, in the case of *Columbia, etc., R. R. Co. v. Hawthorne,* 144 U. S. [202] 292 (12 Sup. Ct. 591), in so holding made use of the following language:

" 'Upon this question there has been some difference of opinion in the courts of the several states. But it is now settled, upon much consideration, by the decisions of the highest courts of most of the states in which the question has arisen, that the evidence is incompetent, because the taking of such precautions against the future is not to be construed as an admission of responsibility for the past, has no legitimate tendency to prove that the defendant had been negligent before the accident happened, and is calculated to distract the minds of the jury from the real issue, and to create a prejudice against the defendant. . . .

" 'The only states, so far as we are informed, in which subsequent changes are held to be evidence of prior negligence, are Pennsylvania and Kansas, the decisions in which are supported by no satisfactory reasons'."

We have, however, recognized an exception to the rule in the long and unbroken line of cases cited in the majority opinion, beginning with the case of *Erickson v. McNeeley & Co.,* 41 Wash. 509, 84 Pac. 3. Where the plaintiff alleges that it was practicable to employ a guard and the defendant denies it or sets up as an affirmative defense that it was impracticable to do so, then the evidence that a guard was actually installed after the accident is, as the majority opinion says, admissible in support of the contention "that the machine

could be practicably guarded." But, of course, unless that issue is in the case, the exception does not apply and the evidence is neither competent nor relevant.

No such issue was raised by the pleadings in this case, and I am unable to find that any such issue was raised by the evidence. On the contrary, it appears that, when the evidence complained of was offered, the defendant admitted in open court that it was practicable to guard the treadle. The plaintiff was the first witness called in the case, and after she had described the printing press and the injury she had suffered, her counsel, evidently having the rule of evidence well in mind, fairly and commendably gave notice that he was about to enter upon debatable ground by making the following statement:

"Mr. Zabel: Now, if your Honor please, I want to ask the witness regarding the placing of a guard upon that treadle which was done shortly thereafter, not as an admission against interest, but from this standpoint only, that it is practicable to put the guard on there. I have the law on it here, and *it is admissible for that one purpose only.*" (Italics mine.)

Defendant's counsel at once indicated that he desired to object and asked that the jury be excused. After the jury was excused, argument was had on the matter, not all of which is included in the statement of facts, but sufficient to show that during its course the trial judge repeatedly indicated that he was disposed to admit the offered evidence. Finally, as a last resort, counsel, representing the defendant, made the following statement:

"Mr. Tammany: Before the jury is called in I would like to enlarge on our objection as to showing a subsequent condition, because *it is admitted that it was practical to make this improvement, or to put on this guard. We object* on the further ground that there has been no showing of bringing home to the defendant any

knowledge that there was any necessity for this guard, and *on the additional ground that there is no issue made up as to whether or not this improvement was a practicable improvement.* So that it is wholly incompetent, irrelevant and immaterial, and we object—" (Italics mine.)

There being no issue made as to whether or not the improvement was practicable, and it being admitted in open court that it was, in fact, practicable, the evidence that a guard was installed after the accident was, as defendant's counsel then contended, clearly incompetent, irrelevant, and immaterial. Its admission was error, and, under the circumstances, it cannot be regarded as harmless. The evidence was admitted early in the presentation of plaintiff's case, and no cautionary instruction of any kind was given at the time. It was evidence, characterized by the supreme court of the United States in *Columbia etc. R. Co. v. Hawthorne,* 144 U. S. 202, 39 L. Ed. 405, 12 S. Ct. 591, as "calculated to distract the minds of the jury from the real issue, and to create a prejudice against the defendant." If it had that effect in this case, and we cannot say it did not, the appellant was deprived of its legal right to present its evidence and its side of the case to an open-minded and unprejudiced jury.

Being of the opinion that the appellant was, at the least, entitled to a new trial, I dissent from the opinion of the majority.