[No. 36846.    Department Two.    July 9, 1964.]

ANTHONY C. DIPANGRAZIO, as *Guardian ad Litem,*
*Respondent,* v. PETER SALAMONSEN *et al.,*
*Appellants.*\*

\*Reported in 393 P. (2d) 936.

*Guttormsen, Scholfield, Willits & Ager,* for appellants Salamonsen *et al.*

*Lycette, Diamond & Sylvester* and *Earle W. Zinn,* for appellant Northwest Builders Hardware, Inc.

*Merges, Brain & Hilyer,* for respondent.

WEAVER, J.—This is an action by a 10-year-old minor for damages for personal injuries sustained when he crashed through a sliding glass door in the home of the Allen McClanes in Lynnwood.

Peter and Otto Salamonsen (hereafter called defendants Salamonsen) built the house and installed a sliding glass door which had been purchased by them from Northwest Builders Hardware, Inc. (hereafter called defendant Northwest). The door was aluminum-framed, 5 feet 11 inches by 6 feet 10 inches. It consisted of two sections, which had been glazed by defendant Northwest with Belgian crystal glass 3/16 of an inch thick. Defendants Salamonsen later sold the house to the McClanes, who are not parties to this action.

The incident occurred while plaintiff was an invited guest in the McClane home. That he was injured is undisputed.

Plaintiff's theory of recovery against the two defendants swings on a pendulum between negligence and breach of implied warranty. The complaint sounds primarily in negligence. The evidence adduced at trial presents a question of breach of implied warranty for having furnished an article inherently dangerous. The court's instructions lean more to the theory of negligence than to the theory of warranty. The appellate briefs swing, once again, to emphasize breach of implied warranty.

The jury returned a verdict for both defendants. Upon motion, the trial court granted plaintiff a new trial, and it is from this order that both defendants appeal.

Although the ultimate question for our decision is the propriety of the order granting a new trial, we must first dispose of the contention of both defendants that the court erred when it denied their challenge to the sufficiency of the evidence at the close of the case.

It is neither unexpected nor unusual that plaintiff should advance two theories upon which he bases his right to recovery—breach of implied warranty and negligence. Frequently the two theories are so intertwined that it is difficult to separate them with precision. Their relationship is discussed in the well-considered opinion in *Freeman v. Navarre,* 47 Wn. (2d) 760, 289 P. (2d) 1015 (1955).

In many of the decided cases confusion arises from the erroneous assumption that implied warranty of fitness and safety for the intended use of a chattel must spring from contract; that there must be privity of contract between the parties; that after acceptance, the fabricator is not liable for breach of warranty unless, within a reasonable time, notice of breach of warranty is given. RCW 63.04.500.

These arguments are specious and have no application to the fact pattern of the instant case in which a third party claims to have suffered injury from the use of the product of a remote manufacturer.

The seller's warranty is a curious hybrid of tort and contract. Prosser, Law of Torts (2d ed.) § 83, p. 493. It has not lost its original tort character. We recognized this in *Esborg v. Bailey Drug Co.,* 61 Wn. (2d) 347, 378 P. (2d) 298 (1963), and *LaHue v. Coca Cola Bottling, Inc.,* 50 Wn. (2d) 645, 314 P. (2d) 421 (1957). Of course, if breach of actual representations can be proved and there is privity of parties, the action may be in contract; but primarily, a manufacturer's liability for having furnished an inherently dangerous product to the public sounds in tort. That the action is a product of the common-law decisions has been recognized in a variety of situations. *Greenman v. Yuba*

*Power Products, Inc.,* 27 Cal. Rptr. 697, 377 P. (2d) 897 (1962) and cases cited.

■ The Uniform Sales Act requirement of notice (RCW 63.04.500) may be a sound commercial rule designed to protect the seller against unduly delayed claims for damages, but were it applicable in a case such as this, it would be a misapplication of the statute and become a "booby trap for the unwary." As said in *Greenman,* supra:

" . . . It [the statute] does not provide that notice must be given of the breach of a warranty that arises independently of a contract of sale between the parties. . . ."

See *LaHue v. Coca Cola Bottling, Inc., supra.*

### Defendants Salamonsen

Defendants Salamonsen were not retailers of a product; they were residential house constructors and sold this house and lot to the McClanes. Building materials available to them and customarily used as standard products in construction were purchased on the market from a reputable wholesaler in whom they had complete confidence. Selection of the door was made from a catalogue of defendant Northwest and purchased as a unit after its fabrication. The parties stipulated, and the jury was so instructed, that in 1957 in the Greater Seattle area, in excess of 90 per cent of all aluminum-framed, sliding-glass doors in homes of the same general type and price class as the McClane's used an aluminum-framed, sliding-glass door glazed with 3/16 inch crystal glass.

We pointed out recently (*Glazer v. Adams, ante* pp. 144, 148, 391 P. (2d) 195 (1964) ) that it is more difficult to illustrate and prove the negative than the affirmative. This observation is apposite.

■ We have reviewed and studied the record of this case carefully. We are unable to find any evidence of negligence on the part of the defendants Salamonsen. Although the factual pattern is slightly different, in *Ringstad v. I. Magnin & Co.,* 39 Wn. (2d) 923, 926, 239 P. (2d) 848 (1952), we recognized the general rule that there is no

obligation on a retailer of a chattel to test a product in the absence of some circumstance suggesting the necessity therefor. There is no such circumstance in the instant case, and we know of no reason why the same rule should not apply.

■ Nor do we find that the evidence supports a conclusion of breach of warranty by defendants Salamonsen. They sold land with a house on it.

The rule is set forth in Restatement, Torts §§ 352, 353:

§ 352. "Except as stated in § 353, a vendor of land is not subject to liability for bodily harm caused to his vendee or others while upon the land after the vendee has taken possession by any dangerous condition, whether natural or artificial, which existed at the time that the vendee took possession."

§ 353. "A vendor of land, who conceals or fails to disclose to his vendee any condition whether natural or artificial involving unreasonable risk to persons upon the land, is subject to liability for bodily harm caused thereby to the vendee and others upon the land with the consent of the vendee or his subvendee, after the vendee has taken possession, if

   (a) the vendee does not know of the condition or the risk involved therein, and

   (b) the vendor knows of the condition and the risk involved therein and has reason to believe that the vendee will not discover the condition or realize the risk."

There is nothing in the record to establish that defendants Salamonsen knew of a dangerous condition. In fact, the record is to the contrary.

The challenge to the sufficiency of the evidence of defendants Salamonsen should have been sustained. Hence, the order granting plaintiff a new trial against them is reversed.

### Defendant Northwest

Respondent states in his brief:

"The respondent's [plaintiff's] claim of liability against the appellant, Northwest Builders Hardware, the manufacturer, is predicated on a doctrine of manufacturer liability and implied warranty."

■ The crux of plaintiff's argument is that defendant Northwest, as manufacturer, furnished a product that is "inherently and imminently dangerous" to human safety, which means nothing more than that substantial harm is to be anticipated if the chattel is defective. Prosser, Law of Torts (2d ed.) p. 500.

Was the 3/16 inch Belgian crystal glass door inherently or imminently dangerous? Did Northwest exercise reasonable care to make the door safe for the use for which it was manufactured?

These questions must be resolved by the trier of the facts under the rule that:

"A manufacturer who fails to exercise reasonable care in the manufacture of a chattel which, unless carefully made, he should recognize as involving an unreasonable risk of causing substantial bodily harm to those who lawfully use it for a purpose for which it is manufactured and to those whom the supplier should expect to be in the vicinity of its probable use, is subject to liability for bodily harm caused to them by its lawful use in a manner and for a purpose for which it is manufactured." Restatement, Torts § 395.

Plaintiff has produced sufficient evidence to have these questions resolved by the jury; hence, it was not error to deny defendant Northwest's challenge to the sufficiency of the evidence.

### Order Granting New Trial

We have already disposed of the order granting a new trial as it affects defendants Salamonsen. The following applies only to plaintiff's right to a new trial against defendant Northwest.

The record of the instant case cannot be read without reaching the conclusion that the trial judge "ran a taut ship," a conclusion he himself reached when he considered post trial motions. He said:

". . . I think that probably I was pushing the case too hard, and prevented counsel from making the record that he should have made and under other circumstances would have made. . . ."

As a result, the order granting a new trial is a careful and conscientious effort of the trial judge to set forth "definite reasons of law and facts for so doing" in accordance with Rule of Pleading, Practice and Procedure 59.04W; RCW Vol. 0; 4 Orland's Washington Practice 449 *et seq.*

The court's conclusion that substantial justice had not been done[1] is based, primarily, on two reasons: (a) the exclusion of certain evidence; and (b) the admission in evidence of a moving picture of an experiment involving a glass door.

The record discloses that early in the trial of the case, it became apparent to plaintiff's counsel, from the trial judge's rulings and remarks, that he would be limited in the production of evidence of other glass door accidents occurring after the incident in the McClane home. The trial judge admitted freely that he ". . . understood clearly what counsel's witnesses were going to testify to . . . ." He said: "I was wrong in restricting counsel from showing the injuries received by many others. . . ." He is now of the opinion that "the frequency of their occurrence" (incidents involving collision with glass doors) is relevant and probative of whether glass doors were inherently and imminently dangerous. We agree the evidence is admissible in support of plaintiff's theory of his claim against defendant Northwest, but not to the extent of showing the seriousness of the injuries resulting therefrom.

The trial court admitted in evidence a moving picture, but not the sound track, of a laboratory experiment in which a sandbag was swung against a glass door. Of this, the trial court said in the order granting a new trial:

"I am also satisfied in reviewing my notes and in going back over the case that I was in error in permitting the motion picture film to be shown. Particularly was this true when I prohibited Mr. Hilyer [plaintiff's counsel] from introducing the evidence that he would have introduced through . . . [two witnesses] as to the number and fre-

---

. [1]We have reviewed the extensive footnote (probably dictum) appearing in *Sullivan v. Watson,* 60 Wn. (2d) 759, 765, 375 P. (2d) 501 (1962) and the well-considered article, "New Trials for Failure of Substantial Justice," Trautman, 37 Wash. L. Rev. 367 (1962). *Cf. Durkan v. Leicester,* 62 Wn. (2d) 77, 81, 381 P. (2d) 127 (1963).

quency and seriousness of the injuries resulting from the breaking of glass doors. This was compounded and aggravated by the fact that the tests as made did not use a weight that was equivalent of that of the boy and did not go to the extent of determining the point at which the glass would break."

■ We view the exclusion of evidence of an experiment somewhat more critically than its admission. *State v. McMurray*, 47 Wn. (2d) 128, 286 P. (2d) 684 (1955); *Amsbary v. Grays Harbor R. & Light Co.*, 78 Wash. 379, 139 Pac. 46, 8 A.L.R. 1 (1914).

Recently, in *Cowan v. Chicago, M., St. P. & Pac. R.*, 55 Wn. (2d) 615, 349 P. (2d) 218 (1960), the court said:

"Determining whether a test is made under substantially similar conditions to those with which the trial court is concerned, is a matter within its discretion; and we will not reverse unless we are satisfied that there has been an abuse of discretion . . . [citing cases], and the abuse of discretion has been prejudicial to the appellant.

" . . .

"We have said that evidence concerning such tests, as that now under discussion, should be admitted with care— and only when it appears that the conditions under which the test was made and all of the surrounding circumstances are reasonably comparable to those with which the court is concerned,—'the test is supposed to be of assistance to the trier of the facts.' *Briggs v. United Fruit & Produce, Inc.* (1941), 11 Wn. (2d) 466, 479, 119 P. (2d) 687."

Having viewed the moving picture during appellate argument, we cannot say that it would have been an abuse of discretion to have excluded it from evidence.

In summary—

The order granting a new trial against defendants Salamonsen is reversed and the cause remanded with instructions to dismiss them from the action with prejudice. They will recover costs.

The order granting a new trial against defendant Northwest is affirmed. Costs shall abide the final determination of the cause. Rule on Appeal 55 (b) (1).

It is so ordered.

OTT, C. J., HILL, FINLEY, and HAMILTON, JJ., concur.