[No. 39483.  En Banc.  May 1, 1969.]

ANDERSON BROWN, *Respondent,* v. QUICK MIX COMPANY, *Appellant,* STAR MACHINERY COMPANY, *Respondent.**

*Reported in 454 P.2d 205.

*Preston, Thorgrimson, Horowitz, Starin & Ellis,* by *John A. Gose* and *Charles E. Peery,* for appellant.

*Miracle & Pruzan,* for respondent.

ROSELLINI, J.—This is a products liability action, brought against the manufacturer and the retailer of an earth-boring drill by a "pile buck" whose job it was to manually guide the drill to the desired position for drilling a hole. In the process of doing so, he got his hand caught between the flights of the auger and a metal centralizer attached to the H beam which held the auger in place for drilling. He lost three fingers and a part of his right hand. The jury found that the manufacturer was liable in the amount of $76,719 but exonerated the retailer.

The evidence showed that the components of the drill were bought by the respondent's employer for the purpose of drilling holes in connection with the construction of a freeway in Seattle. The drill was designed to be attached to a crane from free swinging lines and to be used with an H beam as a steadying device. It was designed to be used in the way that it was being used at the time the respondent was injured, although, as the appellant points out, it was also designed to be used in other ways. For example, it could be mounted on a truck and used for tunneling.

Two pile bucks were assigned to tend the drill, centering the auger over stakes which had been set by engineers, and signaling the crane operator to lower, first the auger, then

the H beam with the centralizer attached. It was also necessary for the pile buck to hold the centralizer in position while the H beam was being lowered. When the centralizer was lowered, it naturally passed over the flights of the auger, creating a shearing action. It was the appellant's position in the court below that this situation was an open and apparent hazard and that, if the respondent's hand was under the centralizer and between the flights of the auger, it was there because of the respondent's carelessness. It was the respondent's contention, on the other hand, that the shape of the centralizer (which was like a round pipe surrounding the auger with no lip or "collar" at the bottom edge) was such that there was an unreasonable risk of a pile buck's getting his hand caught between the centralizer and the auger, particularly in view of the fact that the pile buck had to work in slippery and uneven soil where he could easily be thrown off balance, and that safeguards should have been provided.

The respondent's testimony was that he did not put his hand under the centralizer, but was holding it on the sides in the usual way when he signaled the crane operator to lower the centralizer, and that his hand slipped in some way as the centralizer was being lowered and got caught between the bottom edge of the centralizer and the auger.

The jury was instructed on the liability of a manufacturer for negligence in the design of a product and for violation of an implied warranty of fitness, basing its instructions on the law set forth in *Dipangrazio v. Salamonsen,* 64 Wn.2d 720, 393 P.2d 936 (1964). This court has more recently adopted the concept of liability expressed in the Restatement (Second) of Torts § 402A, at 342 (1965). *Ulmer v. Ford Motor Co., ante* p. 522, 452 P.2d 729 (1969). However, this case was tried on the theories set forth in the trial court's instructions, and the respondent has stated that he is content with those instructions, even though they state the law less simply than does section 402A and might conceivably place upon him a greater burden of proof. We will treat those instructions as the law of

the case, except insofar as they are questioned by the appellant.

■ We will discuss only those of the 19 assignments of error which are supported by citation of authorities, since none of those not so supported is well taken on its face. *State v. Gregory*, 73 Wn.2d 537, 439 P.2d 400 (1968). Also, we will discuss as one contention those assignments of error which are argued together.

The first of these is that the danger was open and apparent, the respondent was aware of it, and therefore there was no liability. As the respondent states in his brief, his testimony was that he was aware that if he put his hand under the centralizer and signaled for the crane operator to drop the H beam, it would shear off his hand. But he was not aware of the danger of having his hand slip and get caught between the centralizer and the auger, which danger existed, the evidence showed, because there were no adequate handles on the centralizer and its shape was such that it would not deflect his hand away from the auger if it slipped while he was holding the centralizer or guiding it into position. Thus, there was evidence upon which the jury could find that the respondent was not aware of the danger.

Under the rule adopted by this court in *Ulmer v. Ford Motor Co.*, *supra*, the fact that a danger is patent does not automatically free the manufacturer from liability, but does so only if the plaintiff voluntarily and *unreasonably* encounters it. Restatement (Second) of Torts § 402A, comment *n* at 356 (1965). It could never be said as a matter of law that a workman whose job requires him to expose himself to a danger, voluntarily and unreasonably encounters the same. *See Miller v. St. Regis Paper Co.*, 60 Wn.2d 484, 374 P.2d 675 (1962).

■ In this case, however, the trial court instructed the jury in instruction No. 21 that the respondent could not recover if he was aware of the particular danger and voluntarily exposed himself to it, and neither the appellant nor the respondent has assigned error to that instruction. It

is therefore the law of the case. Since there was evidence to support the jury's finding that the respondent did not assume the risk, it was not error to refuse to hold as a matter of law that he did so.

▇ The appellant urges that the court erred in submitting the theory of implied warranty to the jury because there was no evidence of privity between the appellant and the respondent. Under the instructions given by the trial court, it was not incumbent upon the respondent to prove privity in order to recover. The court instructed the jury that the warranty implied in law extends to all whom the manufacturer should reasonably expect to use his product. This instruction was in accord with the law of this jurisdiction. *Ulmer v. Ford Motor Co., supra; Dipangrazio v. Salamonsen, supra.*

▇ Conceding that privity may not be necessary, the appellant next argues that it was error to instruct on warranty at all, that the negligence instructions adequately covered the applicable law, and that instructions on breach of implied warranty were redundant. It would be more accurate to say that the warranty instructions adequately covered the law and the negligence instructions placed an unnecessary burden on the respondent. In its instruction No. 12, the court said, regarding the warranty implied in law:

As applied to the instant case the question is: Was there an unreasonable risk of the equipment causing substantial bodily harm to a person using it in a reasonable manner and for a purpose for which it was manufactured?

This was an accurate statement of the question before the jury. *See Ulmer v. Ford Motor Co., supra.* If the court's further instructions on the theory of negligence placed on the respondent the burden of proving more than this, that is an error of which only the respondent can complain. The appellant has not shown in what respect it was hurt by the giving of the two sets of instructions.

Error is next alleged in the admission of certain bro-

chures and operating instructions issued by the appellant, it being the contention that there was no reliance upon these publications and therefore they cannot be the basis of recovery. The answer to this is that the documents were not received as evidence of breach of an express warranty or as the basis for recovery by the respondent. They were admitted in evidence as tending to show that, although the purchaser did not follow the instructions of the appellant in setting up the drill, it was set up in a manner contemplated and approved by the appellant. This evidence was important in refuting the appellant's contention in the court below that it had sold a "box of parts" and could not be held responsible for an injury resulting from the manner in which they were put together and operated.

The appellant's authorities, holding that documents upon which the plaintiff has not relied will not support a recovery for breach of express warranty, are irrelevant. No authorities are cited which would support a contention that the documents were not admissible for the purpose for which they were actually offered and received in evidence. They were relevant and competent for this purpose.

It is urged that the court erred in permitting evidence of subsequent changes made in the centralizer. The evidence showed that, on the day the accident occurred, the respondent's employer welded a guard in the shape of a truncated cone on the centralizer, and that it was used thereafter with this guard attached to it. While there was some dispute as to whether the guard was practical under certain circumstances, the respondent's evidence tended to show that it did not hamper the use of the drill. This evidence was, of course, admissible to show feasibility of guarding the centralizer, and the trial court instructed the jury that it should be considered only for this purpose and not as evidence that the respondent or the retailer was "negligent."

Nevertheless, the appellant claims that the evidence was inadmissible because it admitted that the guard was feasible, and because it did not itself inject the issue of feasibil-

ity into the case. As to the first of these contentions, the fact that the appellant admitted the feasibility, assuming it is correct in that evaluation of the position which it took at the trial, that did not remove the issue from the case. Its codefendant vigorously contended that the guard was not practical.

The appellant fails to point out how it was prejudiced by the introduction of evidence on a matter which it alleges it did not contest. The admission of evidence on an uncontested matter is not prejudicial error. *Matthews v. Spokane*, 50 Wash. 107, 96 P. 827 (1908); 5 Am. Jur. 2d *Appeal and Error* § 800 (1962).

The second contention referred to above, that the evidence was only admissible if the issue of feasibility was injected by the appellant, is based upon language of this court in the case of *Kennard v. Mountain View Dev. Co.*, 69 Wn.2d 492, 419 P.2d 154 (1966). We said there that evidence of subsequent repairs could only have been admissible if the defendant had injected the issue of feasibility into the case. That was too strict a limitation upon the use of such evidence. The correct rule was stated in *Cochran v. Harrison Memorial Hosp.*, 42 Wn.2d 264, 254 P.2d 752 (1953), cited in the *Kennard* case, wherein this court said that under the exceptions to the general rule that evidence of subsequent repairs is not admissible to prove prior negligence, such evidence may be admitted for the limited purposes of showing dominion or control over the instrumentality or to show the practicality of the use of a safeguard. We have held it admissible where feasibility was a factor in the plaintiff's case. *Banks v. Seattle School Dist. No. 1*, 195 Wash. 321, 80 P.2d 835 (1938); *Hatcher v. Globe Union Mfg. Co.*, 178 Wash. 411, 35 P.2d 32 (1934).

If the evidence is competent to show that the use of a safeguard is feasible, and the issue of feasibility is in the case, the evidence is competent regardless of whether the issue is a part of the plaintiff's case, with the burden of establishing it being upon him (which is true in the ordinary negligence case), or the defendant injects it as a de-

fense. This court inadvertently departed from the rule in the *Kennard* case, and insofar as that case holds that evidence of subsequent repairs is admissible only if the issue of feasibility is injected by the defendant, it is hereby overruled.

It should be noted that all the parties to this action, as well as the trial judge, assumed that the rule excluding evidence of subsequent changes or repairs, except for the purpose of showing feasibility, was applicable in this case. It would appear, however, that the theory on which it is grounded renders it inappropriate here. That theory is that, if the jury may infer an *admission* of negligence from the fact that the *defendant* made repairs or changes after an accident, this would discourage the making of such repairs and changes. *Columbia & Puget S. R.R. v. Hawthorne,* 144 U.S. 202, 36 L. Ed. 405, 12 S. Ct. 591 (1892). *Banks v. Seattle School Dist. No. 1, supra; Hatcher v. Globe Union Mfg. Co., supra;* 29 Am. Jur. 2d *Evidence* § 275, at 323-24 (1967).

Since the appellant did not make the changes in the centralizer, the fact that such changes were made could not conceivably raise in the minds of the jury an inference that the appellant had admitted it was negligent in not making the changes sooner. Nor could the evidence show dominion and control, a purpose for which such evidence is sometimes useful. Thus, the only possible utility of the evidence was to show that the changes were feasible. The appellant could not have been prejudiced by it, even if it had been admitted without the qualifying instructions which were given by the court and which were perhaps more favorable than the respondent had a right to expect.

The appellant charges the respondent's attorney with misconduct in attempting to bring out evidence of the subsequent changes made by his employer and in asking one of appellant's witnesses why the changes were not made before. The latter question was propounded on cross-examination after the witness had said the danger was obvious. As we have observed, the evidence of subsequent changes

was admissible. The appellant has cited no authority supporting its contention that the question on cross-examination was improper, and there is no patent impropriety.

The respondent was entitled to test the witness's statement that the danger was obvious, and his pointing out the failure to do anything to guard against an injury before the accident occurred tended to serve that purpose. We fail to see how the appellant was prejudiced by the question. If the reason for not installing safeguards was impracticality, here was an opportunity to expound the same. In any event, the trial court instructed the jury to disregard the question and not to consider the matter as evidence of negligence, and the error if any was thereby cured.

■ Misconduct is also claimed on the part of the respondent's attorney in remarking to the jury upon the size of the appellant company and the fact that it was in business to make a profit. The appellant points out that such references tend to arouse the sympathy of the jury for the relatively poor plaintiff and are improper. However, this objection was not made in the trial court at a time when the court could have instructed the jury to disregard the argument. The truth of the statements, irrelevant though they were, was obvious to the jury. This type of misconduct is not of the type which is so flagrant and prejudicial that an instruction could not cure it, and therefore it does not warrant the granting of a new trial. *McUne v. Fuqua*, 42 Wn.2d 65, 253 P.2d 632 (1953).

■ Error is assigned to the admission in evidence of a model of the centralizer, the contention being that it was not substantially similar to the original. The dissimilarities were pointed out to the jury, and the model was used for illustrative purposes only. We are convinced that the trial court did not abuse its discretion in admitting it.

■ Error is assigned to the court's refusal to give an instruction taken from the language of RCW 63.04.160, in the Uniform Sales Act, defining an implied warranty of fitness. The sales act has no application in a case of this

kind. *Ulmer v. Ford Motor Co., supra.* The trial court did not err in refusing the instruction.

The judgment is affirmed.

HUNTER, C. J., HILL, FINLEY, WEAVER, HAMILTON, HALE, and McGOVERN, JJ., concur.

NEILL, J. (dissenting)—I am in disagreement with the view of the majority that evidence of subsequent changes (the welding of a truncated cone to the centralizer) is admissible to show feasibility when the issue of feasibility has not been raised by the defendant. The admission of evidence of this nature is extremely prejudicial to a defendant which has, in good faith, attempted to prevent recurrence of an accident and injury. The exception we have heretofore permitted (*Kennard v. Mountain View Dev. Co.,* 69 Wn.2d 492, 419 P.2d 154 (1966)), which allowed evidence of subsequent change only when the issue of feasibility is injected by the defendant being charged with negligence, should not be enlarged.

It is not realistic to hope that the jury will make the fine distinctions required to differentiate between evidence of the feasibility of making a change to prevent an injury, and negligence itself. To permit the plaintiff to initially inject evidence of feasibility is to effectively change the rule against admissibility of evidence of subsequent change on the issue of defendant's negligence, and I dissent from such position.

The evidence that a truncated cone was installed on the centralizer by a third party after the injury to plaintiff is particularly damaging to the defendant manufacturer when viewed under the circumstances of the case. The cone was installed by plaintiff's employer who is not a party to this litigation. The defendant manufacturer, now charged by jury verdict with the liability, has never denied that the enlarged guard was feasible, but contends the omission thereof was not negligence. The retailer codefendant, which is now absolved from liability, was the one which contended the guard was not practical. As a result, we have a

defendant which has been found negligent on evidence admitted on an issue which it neither created nor contested. Further, this manufacturer has not acted in concert with the contending retailer nor is it in a vicarious position to the retailer. Finally, this evidence is heard by a jury which has been subjected to an emotional outburst by plaintiff's counsel while questioning one of the appealing defendant's witnesses on this very point. Without burdening this opinion with reiteration of the reasons for my position, I suggest a reading of the dissenting opinion of Justice Robinson in *Banks v. Seattle School Dist. No. 1,* 195 Wash. 321, 324, 80 P.2d 835 (1938).

Under the combination of circumstances set forth, I would grant the defendant a new trial.

July 17, 1969. Petition for rehearing denied.