WILBERT FABER, FATHER AND NATURAL
GUARDIAN OF KIM FABER, A MINOR, AND
ANOTHER v. JAMES ROELOFS AND OTHERS.

212 N. W. 2d 856.

November 16, 1973—No. 43703.

*Skewes & Vollmer, Faegre & Benson* and *Wright W. Brooks,* for appellant.

*Winter, Lundquist, Sherwood & Athens, Marvin E. Lundquist,* and *Donald Pedersen,* for plaintiff respondents.

*Erickson, Zierke, Kuderer & Utermarck, Charles R. Zierke,* and *Robert Rice,* for respondents Brouwer and Roelofs.

*Benjamin Vander Kooi,* for respondent Southwest Christian Elementary School.

MACLAUGHLIN, JUSTICE.

This appeal is taken by defendant Independent School District No. 581, a public school district in Edgerton, Minnesota, from a judgment in favor of plaintiffs, Kim Faber and Wilbert Faber, Kim's father. Plaintiffs were awarded damages as a result of

injuries Kim received in an accident involving a school bus provided to Kim's parochial school by defendant public school district. We affirm.

Plaintiff Kim Faber was a second-grade pupil at defendant Edgerton Christian Elementary School, a parochial school located in Edgerton. At the time of Kim's accident, defendant public school district was providing bus transportation for defendant parochial school pursuant to Minn. St. 123.76 to 123.79. Bus routes were established at a meeting in August 1969, attended by the bus drivers, Allen Vis, principal of defendant parochial school, and Jerome Harrington, superintendent of defendant public school district. The street abutting Kim's school had a curb on the school side, but the opposite side had no curb and the edge of the street was rather undefined. On the noncurb side, the hard surface merged into a gravel area, and the gravel area merged into a grass area. Kim's bus was routed to arrive each day on the noncurb side of the street opposite the school sometime after the children were dismissed from school. This choice of routing was an important factor in plaintiffs' claim of negligence.

On March 24, 1970, Kim, who was then 7 years old, his older siblings, and others were waiting on the noncurb side of the street for their school bus to take them home from school. As the bus approached them, Kim and the others ran into the street along the side of the bus. Kim slipped and fell under its right rear wheel and was severely injured.

Kim and his father, Wilbert Faber, brought this action against the public school district; Kim's parochial school; James Roelofs, the owner of the bus; and Arnold Brouwer, the driver of the bus.

Pursuant to a special jury verdict, the trial court found that Roelofs and Brouwer were not negligent; that the public school district was 40 percent negligent;[1] that the parochial school was

---

[1] According to the special verdict, 20 percent was by reason of the school district's acts or failure to act in the establishment of a bus route and 20 percent by reason of its acts or failure to act in the establishment of bus loading and unloading procedures.

25 percent negligent by reason of its acts or failure to act in providing supervision of the students; that Kim was 35 percent negligent; and that the negligence so apportioned combined in the same proportions to directly cause the accident.

■ Defendant public school district claims it is entitled to a new trial because the trial court admitted evidence that the district changed its school bus routes and loading procedures after Kim's accident. Generally, evidence of repairs made or precautions taken after an injury is inadmissible to prove a negligent condition at the time of injury. 13B Dunnell, Dig. (3 ed.) § 7055. Exclusion of such evidence rests on a social policy of not discouraging people from taking steps in furtherance of added safety. Further, subsequent repairs or precautions should not be viewed as an admission of negligence. After an unexpected accident has occurred, a person may, in the light of his new experience, adopt additional safeguards, even though he exercised due care at the time of the accident. Morse v. Minneapolis & St. L. Ry. Co. 30 Minn. 465, 16 N. W. 358 (1883).

However, although evidence of subsequent precautions is inadmissible as an admission of previous neglect of duty, it may be admissible for other evidential purposes. For example, in Lunde v. National Citizens Bank, 213 Minn. 278, 6 N. W. 2d 809 (1942), we held evidence that a doorstop had been placed upon a door after an accident was properly admitted for the purpose of informing the jury, who had observed the scene of the accident, that the conditions they observed were not the same as those at the time of the accident. In McKnight v. City of Duluth, 181 Minn. 450, 232 N. W. 795 (1930), the plaintiff was injured when his automobile entered an unguarded gutter alongside the pavement. We held that certain photographs taken a considerable time after the accident were properly admitted for the limited purpose of showing the width of the street and the location of objects at the place of the accident which had remained unchanged, although some of the photographs incidentally showed a guard constructed after the accident.

If the evidence is admissible for other purposes, the trial court should clearly charge the jury to confine its consideration of the evidence to the issue on which it was admitted and caution them that it should not be considered on the question of defendant's negligence. Lunde v. National Citizens Bank, *supra;* McKnight v. City of Duluth, *supra.*

Plaintiffs argue that the evidence in the instant case of subsequent routing and loading practices was admitted solely to show the feasibility of safer procedures. Although the admissibility of such evidence under the circumstances of this case seems to be of first impression, we hold, based upon the available authorities, that the trial court properly admitted the evidence.

In Fonder v. General Const. Co. 146 Wis. 1, 130 N. W. 884 (1911), the Wisconsin Supreme Court held that evidence that construction workers were moved from a dangerous working position after the plaintiff's injury was admissible, not for the purpose of showing prior negligence, but for showing that it was practicable to so place the workers that they would be out of danger.

Several cases have held that evidence of a change in design or location of machinery following an accident, although inadmissible to show prior negligence, is admissible to show the practicability or feasibility of added safety features. For example, in Kanz v. J. Neils Lbr. Co. 114 Minn. 466, 131 N. W. 643 (1911), the plaintiff lost his balance while working in a sawmill and fell into certain dangerous machinery. This court held that evidence as to a change in the location of the dangerous machinery was properly admitted for the purpose of showing the practicability of making the work site safer in this way. The trial court in its charge expressly stated that the jury should consider the evidence only on this point.

In Boeing Airplane Co. v. Brown, 291 F. 2d 310 (9 Cir. 1961), the court held that, although evidence of a change in a machine after an accident is generally inadmissible to show prior negligence, such evidence was admissible where its limited purpose

was to show that it would have been feasible and practicable to incorporate safety features in the design at the time the machine in question was built. See, Johnson v. United States, 270 F. 2d 488 (9 Cir. 1959), certiorari denied, 362 U. S. 924, 80 S. Ct. 677, 4 L. ed. 2d 742 (1960) ; Skeeters v. Skeeters, 237 Ore. 204, 389 P. 2d 313 (1964) ; Franklin v. Webber, 93 Ore. 151, 182 P. 819 (1919) ; Brown v. Quick Mix Co. 75 Wash. 2d 833, 454 P. 2d 205 (1969) ; Hatcher v. Globe Union Mfg. Co. 178 Wash. 411, 35 P. 2d 32 (1934) ; Banks v. Seattle School Dist. No. 1, 195 Wash. 321, 80 P. 2d 835 (1938); Tyler v. Dowell, Inc. 274 F. 2d 890 (10 Cir. 1960), certiorari denied, 363 U. S. 812, 80 S. Ct. 1248, 4 L. ed. 2d 1153 (1960). See, generally, Annotations, 170 A. L. R. 7, 64 A. L. R. 2d 1296 ; 2 Wigmore, Evidence (3 ed.) § 283.

In the instant case, the trial court instructed the jury regarding the evidence of subsequent changes in routing and loading practices as follows:

"You have also heard testimony about changes made in busing routes and procedures after the accident in question. You are instructed that such evidence is not an admission of negligence by any party and by itself is not evidence of negligence and you shall not so consider it. Such evidence was admitted solely for the purpose of showing the variety of routes and procedures available for use by the schools and to aid you in analyzing the reasonableness of the routes and procedures in use on the day of the accident."

Where the case is being tried to a jury, trial courts must exercise great caution in admitting evidence of repairs made or precautions taken after an accident for the purpose of showing the feasibility of precautionary measures. However, the trial court is entitled to weigh the need for such evidence against the risk that the jury may improperly infer negligence therefrom. Hence, the trial court's ruling on such evidence will be upheld except upon a showing of abuse of discretion. Boeing Airplane Co. v. Brown, *supra*.

While the question is close, we have decided, particularly in view of the instruction to the jury, that the trial court did not abuse its discretion by admitting the evidence for the limited purpose of showing the feasibility of safer procedures.

■ Defendant public school district contends that the trial court committed prejudicial error by reading to the jury as part of the instructions certain portions of the Minnesota School Bus Drivers Handbook. Applicable statutes and regulations having the force and effect of law can properly be read to the jury. Mikes v. Baumgartner, 277 Minn. 423, 152 N. W. 2d 732 (1967). However, the handbook in question was not a regulation adopted pursuant to the procedures set forth in § 15.0412 of the Administrative Procedure Act, Minn. St. 15.01 to 15.41, and thus did not have the force and effect of law. § 15.0413.

Although it is not entirely clear from the record, it appears that at least one of the reasons the trial court read portions of the handbook to the jury was that the court desired to keep certain other parts of the handbook which were prejudicial to defendants Roelofs and Brouwer from the jury. It is common practice to cross out or excise inadmissible portions of otherwise admissible exhibits. In this case, it probably would have been the better procedure to submit the nonprejudicial parts of the handbook to the jury without reading them as part of the instructions. However, here again, the action of the trial court will not be disturbed in the absence of an abuse of discretion. Cf. Pakul v. Montgomery Ward Co. 282 Minn. 360, 166 N. W. 2d 65 (1969); Skinner v. Neubauer, 246 Minn. 291, 74 N. W. 2d 656 (1956); Jensen v. Dikel, 244 Minn. 71, 69 N. W. 2d 108 (1955). We cannot say that reading the admissible portion of the handbook was such an unreasonable method of submitting it to the jury as to constitute reversible error.

■ Defendant public school district also argues it is entitled to a new trial because plaintiffs did not disclose to the court and the other parties until after all evidence was in that, during the trial, they had entered into a covenant not to sue with defendant

parochial school. Defendant public school district contends that plaintiffs thereby unfairly gained certain advantages during the taking of testimony and that it was improper, under the circumstances, to allow counsel for the parochial school to make a final argument to the jury.

We do not approve of such secret settlements. When a plaintiff settles with one of several defendants, fairness requires that full disclosure be made to the trial court and to all parties so that all will know the posture from which each tries the lawsuit.

In this case, however, even though plaintiffs had entered into a covenant not to sue with defendant parochial school, the parochial school was still subject to cross-claims. Therefore, when the secret settlement was disclosed prior to final arguments to the jury, it was not improper for the trial court to permit counsel for the parochial school to participate in the final arguments. Further, after reviewing the record and arguments of defendant public school district, we are unable to find any substantial prejudice resulting from the secret settlement which would warrant reversal. While we do not condone the secret settlement in this case, it does not require a new trial.

■ On the basis of the jury's special verdict, the trial court ordered entry of judgment against defendant public school district in Kim's favor for $94,770, and in Kim's father's favor for $42,900 for Kim's medical expenses. Minn. St. 466.04 provides:

"Subdivision 1. Liability of any municipality on any claim within the scope of sections 466.01 to 466.15 shall not exceed

a. $25,000 when the claim is one for death by wrongful act or omission and $50,000 to any claimant in any other case;

b. $300,000 for any number of claims arising out of a single occurrence.
No award for damages on any such claim shall include punitive damages.

"Subd. 2. The limitation imposed by this section on individual claimants includes damages claimed for loss of services or loss of support arising out of the same tort.

"Subd. 3. Where the amount awarded to or settled upon multiple claimants exceeds $300,000, any party may apply to any district court to apportion to each claimant his proper share of the total amount limited by subdivision 1 of this section. The share apportioned each claimant shall be in the proportion that the ratio of the award or settlement made to him bears to the aggregate awards and settlements for all claims arising out of the occurrence."

Defendant public school district argues that, since Kim's father's damages for Kim's medical expenses during his minority are derivative of Kim's claim, the school district's total liability to *both* should be limited to $50,000. The trial court ruled that, since each is a claimant, the district is subject to a potential liability to *each* of $50,000. Accordingly, after defendant moved to amend the order for judgment, the trial court reduced Kim's recovery to $50,000 and allowed Kim's father's to remain at $42,900.

This court has long recognized that the responsible parent of an injured child has a right of action for the injured child's medical expenses. E.g., Wineman v. Carter, 212 Minn. 298, 4 N. W. 2d 83 (1942); Dentinger v. Uleberg, 171 Minn. 81, 213 N. W. 377 (1927). Although the parent's action is subject to any defenses that could be urged against the child, Wineman v. Carter, *supra,* the parent's action and the child's action are essentially separate. Prosser, Torts (4 ed.) § 125. For example, a judgment against the child does not bar a later action by the father for medical expenses incurred as a result of his child's injury. Bamka v. Chicago, St. P., M. & O. R. Co. 61 Minn. 549, 63 N. W. 1116 (1895); Prosser, *supra.*

Minn. St. 466.04 limits a municipality's liability to "any claimant" to $50,000. Since the parent's action is essentially separate from the child's action, we feel that an injured minor and his father are both claimants under § 466.04 and that each may recover up to $50,000.

■ Minn. St. c. 466 abolishes sovereign immunity of munici-

palities for tort claims, with certain stated exceptions. Under the expressed exceptions, the municipality is not liable for any claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused.[2]

Defendant public school district contends it is entitled to judgment in its favor since the establishment of school bus routes and loading and unloading procedures comes within the "discretionary function or duty" exception to a school district's liability for its torts. However, neither in its briefs nor in its oral argument has the public school district pointed out where this issue was raised before the trial court, and we have been unable to find any indication in the record before us that the issue was raised at the trial level. We have held on numerous occasions that an unlitigated issue may not be asserted for the first time on appeal. Denney v. City of Duluth, 295 Minn. 22, 202 N. W. 2d 892 (1972); State, Dept. of Conservation, v. Sheriff, 296 Minn. 177, 207 N. W. 2d 358 (1973); 1B Dunnell, Dig. (3 ed.) § 407.

■  After a careful review of the record, we hold the evidence was sufficient to support the verdict. We have considered the other issues raised by defendant public school district and do not find them of sufficient merit to warrant reversal.

We also find no merit in plaintiffs' argument that the trial

---

[2] Minn. St. 466.02 provides: "Subject to the limitations of Laws 1963, Chapter 798, every municipality is subject to liability for its torts and those of its officers, employees and agents acting within the scope of their employment or duties whether arising out of a governmental or proprietary function."

Minn. St. 466.03, subds. 1 and 6, provide: "Subdivision 1. Section 466.02 does not apply to any claim enumerated in this section. As to any such claim every municipality shall be liable only in accordance with the applicable statute and where there is no such statute, every municipality shall be immune from liability."

"Subd. 6.  Any claim based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."

court should have directed the jury to find Kim free of contributory negligence.

Affirmed.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.