[No. 43031.   En Banc.   October 3, 1974.]

JAMES BARTLETT, *Respondent,* v. BRUCE HANTOVER *et al., Petitioners.*

*Skeel, McKelvy, Henke, Evenson & Betts,* by *Frederick V. Betts,* for petitioners.

*Casey & Pruzan,* by *Jack M. Sawyer,* for respondent.

UTTER, J.—The Court of Appeals, Division One, affirmed a jury award against a defendant motel owner in favor of his plaintiff employee for gunshot wounds inflicted by a third person upon the plaintiff while he was at work.

There are three issues raised on appeal to this court. The first is whether the trial court erred in permitting evidence of subsequent installation of bulletproof glass in the manager's desk area when there was no issue of fact as to either dominion, control or feasibility of the alterations. The second is the propriety of the instruction on the subject of lost earnings and lost earning capacity. The last is

the defendant employer's liability for injuries to his employee caused by the intentional criminal acts of a third person. The case is remanded for new trial inasmuch as the trial court erred in its ruling on the first issue. The instruction on damages should be modified on retrial. We find no error in the ruling on the defendant's liability.[1]

**On June 22, 1969, at about 10:30 p.m., the plaintiff, who worked as manager of the motel, was in the living quarters behind the office. When he heard the outside door open, he went into the office and stood behind the counter. Two men had entered and one was standing on the left and one to the right of the plaintiff approximately 6 feet away. The plaintiff asked each man separately if he could help him. One responded by saying they would like a room but immediately thereafter, the plaintiff was knocked to the floor by a bullet in the head. He was shot again in the left shoulder as he tried to get up. There was never any mention of holdup or robbery, nor any demand for money; the plaintiff was "just point blank shot without asking, . . ."

Previously on March 19, 1969, the plaintiff had been the victim of an armed robbery in the same office. At that time he offered no resistance, no shots were fired and no one was injured. Between the two occurrences, the plaintiff suggested to the owners that they join an intermittent patrol system and also suggested the placing of a sign in the office to the effect that there was 24-hour surveillance. The owner replied by stating that in neither case would such precautions do any good. A few weeks after the shooting, the owners purchased and installed bulletproof glass and metal plating which made the portion of the motel office behind the counter bulletproof.

The trial court admitted testimony concerning the installation of boiler plate and bulletproof glass to protect the office area behind the counter.**

■■ We have heretofore allowed evidence of safety

---

[1] A portion of the Court of Appeals opinion (*Bartlett v. Hantover* 9 Wn. App. 614, 513 P.2d 844 (1973)) is adopted in full by the court. This portion is set off by asterisks at the beginning and end of the section.

measures after an accident as admissible when the issue of practicability or feasibility is made an issue by either the plaintiff or defendant. *Brown v. Quick Mix Co.*, 75 Wn.2d 833, 454 P.2d 205 (1969). In *Brown,* one defendant admitted that installation of a guard on an auger (which was done after the accident), was feasible before the injury occurred. His codefendant vigorously contended that the guard was not practical. We stressed that if the issue of feasibility is in the case, it is relevant regardless of whether the issue is part of the plaintiff's case and his burden of proof, or injected by the defendant as a defense.

The facts of this case, however, fail to bring it within the exception we noted in *Brown.* The defendant stipulated at a pretrial conference his dominion and control over the motel and the feasibility of better protecting his employee from a third party's crime by installation of bulletproof glass. The evidence was, therefore, not relevant to matters before the jury for consideration. Relevancy "means the logical relation between proposed evidence and the fact to be established." *Keisel v. Bredick,* 192 Wash. 665, 669, 74 P.2d 473 (1937). All facts are admissible in evidence which afford reasonable inferences or throw any light upon the contested matter.

In this case the evidence of subsequent alterations was not admitted to throw any light upon the contested matter inasmuch as at the pretrial conference the defendant motel owner stipulated that he would admit, in testimony upon direct examination, dominion and control over the motel facility and feasibility of better protecting the injured plaintiff from intentional criminal acts of a third person by use of a bulletproof cage in the manager's office. If either of these two questions had been an issue in the case, or a "contested matter" as stated in *Keisel,* then evidence of the defendant's subsequent alterations offered to prove them would have been admissible under our rationale in *Brown.* It takes, however, two parties to make a factual allegation a contested matter in a case. An admission by both sides of what is sought to be established removes it as an issue in

the case and it is not a contested matter. The evidence, which either directly or by inference tends to prove what the other party admitted, is not relevant and should be excluded. This is recognized in C. McCormick, *Evidence* § 275 (2d ed. E. Cleary 1972). There the author recognizes that the general rule is to exclude evidence of remedial safety measures such as repairs, changes and construction, or installation of new safety devices when offered as admissions of negligence or fault. He observes, however, at page 667-68, that

> The ingenuity of counsel in suggesting other purposes has made substantial inroads upon the general rule of exclusion. Thus evidence of subsequent repairs or changes has been admitted as evidence of . . . the possibility or feasibility of preventive measures, when properly in issue; . . .

The author cautions that

> before admitting the evidence for any of these other purposes, the court should be satisfied that the issue on which it is offered is of substantial importance and is actually, and not merely formally in dispute, that the plaintiff cannot establish the fact to be inferred conveniently by other proof, and consequently that the need for the evidence outweighs the danger of its misuse.

(Footnotes omitted.)

■ The evidence of actual subsequent alterations which the trial court admitted into evidence had the prejudicial effect of showing by inference that the defendant himself must have believed his prior inaction was negligent because he subsequently altered the premises. The *subjective belief* of a defendant in a negligence action is not relevant to the issue of his negligence; it is the *objective test* which determines whether one has breached his duty of due care to another, and we have long so held. *Peterson v. Betts*, 24 Wn.2d 376, 165 P.2d 95 (1946).

The issue framed by this case and the issue which this court must decide is:

Given that the defendant admits dominion and control

over the premises and admits the feasibility of better protecting the plaintiff through the use of a bulletproof cage in the manager's office, are such subsequent alterations admissible to prove negligence as an implied acknowledgment by conduct that due care required that these measures should have been taken before the injury?

This is a question which focuses on the defendant's subjective belief and not on an objective test. It also addresses the argument refuted in *Hart v. Lancashire & Yorkshire Ry.*, 21 L.T.R. (n.s.) 261, 263 (1869), that "because the world gets wiser as it gets older, therefore it was foolish before."

The only thing which the introduction of evidence of subsequent alteration added to the plaintiff's case beyond what the defendant stipulated to in pretrial conference was an inference of implied acknowledgment by conduct that the defendant *subjectively* believed that he had breached his duty of due care by not having made the alterations before the injury. This added inference is not an element in the proof of negligence, and in the circumstances of this case where the properly contested matters of feasibility, dominion and control were admitted by the opposing party, the "proof" was prejudicial.

5 R. Meisenholder, Wash. Prac. § 10 at 45, regarding admission of evidence of subsequent repairs, notes:

> Such evidence is not relevant upon an alleged issue if the alleged issue is not in the case upon the pleadings or evidence. Likewise it obviously must be relevant as proof upon the actual issues in the case to which it purportedly relates.

(Footnote omitted.)

■ The instruction on damages told the jury they could consider as an element of damages "the reasonable value of earnings and earning capacity lost together with the present cash value of the earning capacity reasonably certain to be lost in the future." The defendant objected to that portion of the damage instruction on the grounds that there was no evidence in the case to support it. An examination

of the record reveals there was no testimony regarding the amount of either earnings lost from the time of the accident or a formula for reducing lost earning capacity to present cash value. This was erroneous and on retrial should not be repeated. We have stressed that instructions should not be given on issues which are not supported by evidence and that this rule applies to the elements for which damages are to be allowed. *Vangemert v. McCalmon*, 68 Wn.2d 618, 622, 414 P.2d 617 (1966); *O'Donoghue v. Riggs*, 73 Wn.2d 814, 818, 440 P.2d 823 (1968).

■ In *Hinzman v. Palmanteer*, 81 Wn.2d 327, 336, 501 P.2d 1228 (1972), we indicated it was error for the trial court to give a portion of WPI 34.02, 6 Wash. Prac. 182 (1967)[2] without giving the entire instruction, which would have given the jury a basis upon which to determine the present cash value. We there stated "[t]he omission of this paragraph from the instruction, and the absence of any evidence providing a guide for the jury, left the jurors with no evidence or guide from which to determine the appropriate rate of interest to apply. This was a fatal omission . . . ." To instruct the jury to reduce an award to present cash value without further defining what that term is and how it should be applied, is error.

■ We do agree with that portion of the Court of

---

[2] WPI 34.02, 6 Wash. Prac. 182 (1967):

"DAMAGES ARISING IN THE FUTURE—DISCOUNT TO PRESENT CASH VALUE

" 'Present cash value' as used in these instructions means the sum of money needed now, which, when added to what that sum may reasonably be expected to earn in the future, will equal the amount of the loss at the time in the future when [the expenses must be paid] [or] [the earnings would have been received] [or] [the benefits would have been received.]

"The rate of interest to be applied by you in making this determination should be that rate which in your judgment is reasonable under all the circumstances taking into consideration the prevailing rates of interest in the area which can reasonably be expected from safe investments which a person of ordinary prudence, but without particular financial experience or skill, can make in this locality.

"[Damages for [pain and suffering] [disability] [and] [disfigurement] are not reduced to present cash value.]"

Appeals opinion which indicates certainty is not required in the area of proof of lost earning capacity and that portion holding that an employer can be liable to his employee for injuries caused by the intentional criminal acts of a third person.

The judgment is reversed and the case remanded for new trial.

HALE, C.J., and FINLEY, ROSELLINI, HUNTER, HAMILTON, STAFFORD, WRIGHT, and BRACHTENBACH, JJ., concur.