# RAYMOND PAKUL v. MONTGOMERY WARD COMPANY AND OTHERS.

166 N. W. (2d) 65.

January 31, 1969—No. 41002.

*Ryan, Ryan & Ebert,* for appellant.

*Quinlivan, Quinlavin & Williams* and *Nolan, Alderman, Holden & Breen,* for respondents.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Frank T. Gallagher, JJ.

FRANK T. GALLAGHER, JUSTICE.

This is an appeal by defendant Montgomery Ward Company (Ward) from an order of the district court denying its alternative motion for judgment notwithstanding the verdict or for a new trial as to all parties, following a jury verdict in favor of plaintiff, Raymond Pakul, against Ward only.

On December 12, 1964, the date of plaintiff's injury, defendant O'Brien Properties was the owner of a building in Brainerd, Minnesota, then occupied by Ward as tenant under a 5-year lease dated February 1, 1956, and renewed by the parties to the lease on February 1, 1961, for an additional 5-year term. The lease contained the following provisions:

"The Landlord agrees that it will at all times indemnify and hold the Tenant harmless against all actions, claims, demands, costs, damages, or expense of any kind which may be brought or made against the Tenant, or which the tenant may pay or incur, by reason of the Landlord's negligent performance of, or failure to perform, any of its obligations under this lease.

\* \* \* \* \*

"The Landlord further covenants and warrants that it will, on the first day of the term, deliver to the Tenant exclusive possession of the premises, with improvements and appurtenances all in conformity with the

law and in a safe, clean, and tenantable condition, and in good order and repair. * * *

* * * * *

"* * * The Landlord shall promptly make all repairs and replacements (other than those specifically required to be made by the Tenant hereunder) necessary to put and maintain the premises, including all improvements now or hereafter thereon, and all appurtenances thereto * * * in a safe, dry, and tenantable condition, and in good order and repair."

The building leased had a loading dock in the rear from which access to the building was by a large, flexible steel door. This door, which rolled up into a circular housing bolted over the doorway outside the building, served somewhat like a canopy over the entry. On the roof of the building was a small shed containing the elevator mechanism. The roof of the shed projected slightly over the roof of the building. When snow and ice which collected on the roof of the shed and on the door housing melted, the water would run from the shed roof to the housing and the water from both would run onto the dock area. When this water froze, it created a slippery condition on the dock.

On December 12, 1964, plaintiff drove his truck up to the dock to make a delivery. He located a Ward employee, who brought the elevator to the dock level, and the two of them began to unload plaintiff's truck. While engaged in unloading, plaintiff slipped on the dock surface and was injured. The evidence showed that it had snowed the night before; the snow which had collected on the door housing was melting; and the water was dripping onto the dock and freezing there.

Plaintiff brought this action against Ward, O'Brien Mercantile Company, and O'Brien Properties to recover for the injuries he sustained, alleging that the loading dock had been negligently maintained. Defendants cross-claimed against each other for indemnity. The trial court dismissed the action as to O'Brien Mercantile Company, and it is not a party to this appeal. O'Brien Properties is hereinafter referred to as O'Brien.

During the course of the trial, Ward introduced the lease into evi-

dence. O'Brien objected to testimony as to its contents on the ground the document speaks for itself. The trial court sustained the objection, stating that "the instrument [lease] is there and the jury will have the instrument." At the close of the case, pursuant to a motion by O'Brien, the court refused to allow the lease to go to the jury room during deliberations, but, rather, instructed the jury on the pertinent duties and obligations of the lessor and lessee under the lease. Ward took exception to this ruling. The court instructed the jury that under the terms of the lease O'Brien was not required to make any improvements upon the real estate but had the duty to make repairs and that Ward had the right to make improvements and to make repairs if O'Brien failed to do so. Also, that the duty to inspect the premises rested solely upon Ward, and that maintenance of the loading dock surface, so far as snow, ice, or water was concerned, was solely the responsibility of Ward. The court submitted verdict forms on which the jury could find against both defendants, in favor of both defendants, or against Ward alone. It refused to submit a requested form on which the jury could find against O'Brien alone, on the ground that, under the evidence that Ward had the right under the lease to make necessary repairs and bill them to O'Brien if the latter did not make them, a verdict against O'Brien would require a verdict against Ward as a matter of law. Ward took exception to this ruling also.

The jury returned a verdict in favor of plaintiff and against Ward only. The latter moved for judgment notwithstanding the verdict or for a new trial, which motion was denied. In a memorandum attached to and made a part of its order denying the motion, the court stated that the jury verdict foreclosed the cross-claim.

Although it is not entirely clear from its brief, on appeal Ward apparently alleges three errors by the trial court: Refusal to allow the lease to go to the jury; refusal to submit a verdict form on which the jury could find against O'Brien alone, explained to the jury by the instruction that if O'Brien was liable, then, as a matter of law, Ward was liable; and improper handling of Ward's cross-claim for indemnity under the terms of the lease. All three issues involve Ward's claim that the premises were conveyed to it in a defective condition in violation of the express warranty in the lease. Ward states in its brief:

"* * * It is very simply, at this point, the contention of this appellant that the defendant O'Briens failed to perform its obligation to deliver the premises to the tenant in a safe condition."

We shall assume for purposes of this opinion that Ward's objections to withholding the lease and failing to submit the requested verdict form validly raise this issue despite the fact that there was no exception taken to the failure of the court to specifically instruct on the landlord's obligation to convey safe premises.

■ The withholding of exhibits from the jury is a matter within the sound discretion of the trial court. Jensen v. Dikel, 244 Minn. 71, 69 N. W. (2d) 108. Here the lease consisted of 13 legal-size pages containing 38 separate provisions, only a few of which were relevant to the issues involved in the suit. It is drafted in technical legal language and contains provisions, such as that dealing with the tenant's right to indemnity, which may reasonably have created a danger of prejudice. We have examined the lease, the instructions to the jury, and Ward's exceptions to those instructions and can find nothing to justify the claim of prejudice, nor does Ward indicate what "relevant portions" of the lease were omitted from the instructions.

Ward asserts that by withholding the lease from the jury the court removed the legal basis for its cross-claim from the case and made all its evidence of past repairs to the loading dock, door, and door housing meaningless. However, rather than removing the basis of the cross-claim for indemnity, the court reserved decision on that issue to itself and Ward did not object when the court indicated its intention to do so. Further, the jury was specifically instructed that O'Brien had a duty to repair under the lease and that failure to do so or failure to use reasonable care in performing its obligations would constitute negligence. Therefore, we conclude that Ward's claim of prejudice is without support in the record and the trial court's action in withholding the lease was well within the scope of its permissible discretion.

■ The trial court's decision not to submit a verdict form on which the jury could find against O'Brien alone is clearly justified on the record. Testimony by a Ward employee established that during at least 7 years prior to the time of the accident, water from melting snow which

had collected on the door housing and the roof of the shed for the elevator mechanism had dripped on the dock and frozen there. There is no evidence that Ward had ever called this situation to the attention of O'Brien or asked that it be corrected. Under the terms of the lease Ward had exclusive possession of the premises, and it had the right, without prior approval by O'Brien, to make any repairs it considered of an urgent nature and to be reimbursed for any expense incurred, either directly or by deducting such expense from the rent payments. Even if it is assumed that the ultimate responsibility for the unsafe condition of the loading dock rests with O'Brien, Ward cannot use this fact to escape liability to a business invitee on premises that had been in its exclusive possession for some 8 years at the time of the accident. Therefore, the court properly refused to submit the requested verdict form and correctly instructed the jury that a verdict against the landlord required a verdict against the tenant.

■ Ward contends that its cross-claim was improperly handled by the trial court. As pointed out above, there was no objection made when the judge indicated that he would not submit the claim to the jury. The court did, however, submit the question of O'Brien's negligence to the jury, and under the terms of the lease a right to indemnity in Ward exists only if O'Brien either failed to perform or negligently performed any of its obligations under the lease. Thus, as the trial court pointed out in its memorandum, because the jury found that O'Brien was not guilty of any negligent conduct which proximately caused plaintiff's injury, the cross-claim for indemnity was foreclosed. If O'Brien was not guilty of any negligence which gave rise to Ward's liability to plaintiff, by the very terms of the lease it could not be required to indemnify Ward.

■ Ward now claims that the "arrangement" of the loading dock—the fact snow could collect on the door housing and the elevator machinery shed and drop onto the loading dock—constituted a dangerous condition and that turning the building over to Ward while this arrangement existed was a breach of O'Brien's duty under the lease to deliver the premises in a safe condition. It is true that the jury was not specifically instructed as to O'Brien's obligation to deliver the premises in a safe condition. However, Ward did not object to the instructions in this

regard. It took eight separate exceptions to the court's charge, none of which deals with this question. Its failure cannot be justified on the ground the court had reserved the question of indemnity, since such an instruction goes to the issue of negligence on the part of O'Brien and, as pointed out, this issue was submitted to the jury.

It is not clear from Ward's brief whether it believes its objection to withholding the lease from the jury was sufficient or whether it is claiming that O'Brien breached its duties under the lease as a matter of law. Whatever the basis of its claim, it is not validly before this court. The trial court instructed the jury as follows:

"Under the evidence in the case, O'Briens as lessor can be liable to plaintiff only if you find under the facts and other instructions given you as a part of this charge that the sole cause of the injuries sustained by plaintiff was the result of an unreasonable risk of harm to plaintiff existing at the time and place in question and brought about a condition of disrepair arising out *after* Montgomery Ward took possession under the lease, and then only if O'Briens failed to exercise reasonable care to perform their contract as set forth in the lease, the terms of which I have specifically set forth to you as being binding upon [them]." (Italics supplied.)

No exception was taken to this instruction and it is therefore the law of the case.

While it is true that the instruction refers only to O'Brien's liability to plaintiff, it is also true that Ward's right of indemnity is contingent upon the same failure by O'Brien to exercise reasonable care to perform its obligations under the lease that plaintiff was required to show in order to recover from O'Brien. In discussion with counsel about the question of indemnity and the verdict forms, the court stated, "Then, if there is a verdict against both defendants, I assume that I will then have to decide on the cross complaint question." Thus, Ward must have been aware of the fact the trial court believed the claim for indemnity was dependent upon a jury finding of negligence on the part of O'Brien. Ward must also have been aware of the fact the issue of negligence was being submitted to the jury. Therefore, since Ward did not object to the instructions on

the ground they omitted the question of whether the loading dock constituted a dangerous condition at the time the premises were turned over to Ward, and since it did not except to the court's instruction limiting O'Brien's possible liability to the time after Ward took possession, Ward cannot now claim that it should have been granted indemnity because O'Brien failed to deliver safe premises.

While at one time Ward apparently claimed that under the lease it was O'Brien's duty to keep the loading dock free from ice and snow, that position seems to have been abandoned. In view of this fact, we will go no further than to point out that the only evidence in the record is to the effect that employees of Ward have performed this function throughout the time it has been in possession of the building.

Having examined all the claims of error raised by this appeal, we are of the opinion that the order of the trial court denying the motion for a new trial must be affirmed.

Affirmed.