# B. F. KASTNER, ADMINISTRATOR OF THE ESTATE OF LAUREL NYBERG, d.b.a. LAMBERTON HATCHERY, v. WALTER WERMERSKIRSCHEN, d.b.a. ALBERT BAY EGG FARM.

205 N. W. 2d 336.

March 2, 1973—No. 43713.

*I. L. Swanson,* for appellant.

*G. F. Fillenworth, Berens, Rodenberg & O'Connor* and *Richard T. Rodenberg,* for respondent.

Heard before Knutson, C. J., and Otis, Rogosheske, and Olson, JJ.

O. RUSSELL OLSON, JUSTICE.*

Defendant appeals from a judgment entered pursuant to a verdict directed against him on a counterclaim. The issue on this appeal is whether the trial court properly exercised its discretion in excluding proffered expert opinion testimony from a witness who had no significant formal education in the pathology of chicken diseases and whose qualifications rested on experience and practical knowledge.

The plaintiff initiated the lawsuit to recover $4,500, representing the undisputed and unpaid portion of the initial purchase price of nearly $24,000 for 20-week-old pullets delivered to the defendant. The defendant's counterclaim alleges breach of implied warranty as to the fitness of the pullets for the purpose for which they were sold; specifically, the defendant claims that the pullets were diseased when delivered. The trial court directed a verdict for plaintiff on his claim and directed a verdict against defendant on his counterclaim.

On November 18 and 19, 1969, plaintiff delivered to defendant 13,800 pullets, then 20 weeks of age, for defendant's egg-laying operation. According to defendant's testimony, the pullets manifested no symptoms of disease until a week to 10 days after delivery. Autopsies of the pullets were performed 7 to 10 days later by defendant, who was permitted to express the opinion at trial that the cause of death on that date was leukosis, a chicken disease apparently nontreatable with antibiotics or other poultry disease remedies. During the course of the next 13 months, the death rate of the chickens was abnormally high, i. e., about 25 percent over the period, whereas normally it is less than 1 percent per month, and egg production was below normal.

In January 1971, after the chickens had progressed through the normal laying-hen cycle of approximately 1 year and thus completed their owner's service in life, death came in the normal course of events to these birds; in final service to their owner,

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

they were led to slaughter for soup production. Of 265 then rejected by government inspectors for even this lowly last service, only 31 suffered from leukosis.

At trial, defendant attempted to qualify one Signer Rykhus as an expert witness on chicken diseases. The trial judge in chambers carefully elicited an offer of proof from the defendant's witness. Rykhus testified he was a chicken hatchery operator and pullet raiser of 25 years' experience, a student at 15 to 20 diagnostic clinics and lectures by veterinarians schooled in chicken diseases, and a performer of chicken autopsies covering several years, and that he had read literature in the field of chicken diseases. Unlike defendant, Rykhus had not performed any autopsies of the chickens here involved. Rykhus was offered as a witness not merely to testify to the existence of leukosis on the date of the autopsies performed by defendant but also to the presence of the disease 7 to 10 days earlier on the delivery date. Rykhus expressed his opinion that the "incubation" period of the leukosis disease was 5 to 6 months, that the disease was commonly called a cancer, and that he believed leukosis was a virus disease.

There is undisputed evidence in the record that defendant had experienced an abnormally high mortality rate in an earlier flock of hens. There was also undisputed evidence that a separate flock of laying hens, producing eggs simultaneously with the flock in question but in a separate henhouse, had a poorer egg production record than the claimed leukosis-infected flock.

With this state of the record, the trial judge determined the proffered witness was not competent to express an opinion as to the existence of the disease on the delivery date as distinguished from the autopsy date. The judge in his memorandum found Rykhus incompetent to testify regarding the cause of the disease or its "incubation" period. Further, the court found the witness to be deficient in knowledge concerning the specific symptoms which might eliminate some other diagnosis. Since there was no other evidence disclosing the existence of the dis-

ease on the delivery date, a verdict was directed against the defendant on his counterclaim.

We affirm the trial court's decision.

A directed verdict accepts the view of the entire evidence most favorable to the adverse party and admits the credibility (except in extreme cases) of the evidence in his favor and all reasonable inferences to be drawn therefrom. Lovejoy v. Minneapolis-Moline Power Imp. Co. 248 Minn. 319, 79 N. W. 2d 688 (1956); Hanson v. Homeland Ins. Co. 232 Minn. 403, 45 N. W. 2d 637 (1951).

In an action for breach of implied warranty, the burden of proof is upon the party asserting the breach. In this case, the defendant had the burden of proving the chickens suffered from leukosis at the time they were delivered to him. Frame v. Hohrman, 229 Minn. 468, 39 N. W. 2d 881 (1949).

The sufficiency of the foundation to qualify a witness as an expert and therefore to permit him to express an expert opinion is a determination resting largely in the discretion of the trial judge. This court will reverse only if the exercise of that discretion is clearly wrong. Swanson v. Chatterton, 281 Minn. 129, 160 N. W. 2d 662 (1968).

A witness may qualify as an expert not only on the basis of knowledge which he has gained through formal education but also on the basis of knowledge gained through occupational experience. Wigmore defines "occupational experience" as "the kind which is obtained casually and incidentally, yet steadily and adequately, in the course of some occupation or livelihood." 2 Wigmore, Evidence (3 ed.) § 556. See, Alford v. Kruse, 183 Minn. 158, 235 N. W. 903 (1931); Wilson v. Lynard, 162 Minn. 135, 202 N. W. 713 (1925). The fact that the care of animals is generally in the hands of practical men rather than professional men renders it necessary, when considering the admissibility of opinion testimony regarding diseases of animals, to apply a lower standard of qualification to witnesses giving opinion testimony on such matters than is generally applied to expert wit-

nesses offering testimony as to the diseases and ailments of humans. See, 31 Am. Jur. 2d, Expert and Opinion Evidence, § 169; Annotation, 49 A. L. R. 2d 932.

In the Alford and Wilson cases, this court adopted the position that a formal education in animal diseases is not necessary to qualify a witness as an expert. In each of these cases, the plaintiff claimed breach of warranty because of the presence of contagious abortion (brucellosis, also known as Bang's disease) in cows purchased from the defendant. These cases held that farmers who had gained knowledge of Bang's disease through practical experience in the care of cows could testify that the cows were infected with the disease. In those cases the opinion testimony went to establish the presence of the disease. They do not hold that a so-called lay expert witness who is qualified to diagnose the presence of an animal disease necessarily qualifies also as an expert in the causation and onset of that animal disease. The instant case, however, requires evidence relative to the cause and onset of the disease as well as evidence which would establish that leukosis, rather than other factors, caused the loss of egg production and the increased mortality rate among the birds.

We find that the trial court properly exercised its judicial discretion in determining that the proffered expert witness was not shown to be sufficiently qualified in the pathology of the particular chicken disease in question here and in determining that insufficient foundation had been disclosed for his expert opinion concerning the onset of the alleged disease.

Affirmed.