ROBERT C. LARSON, INDIVIDUALLY AND d.b.a.
LARSON'S SUBURBAN GREENHOUSES, v.
MIDLAND COOPERATIVES, INCORPORATED.

232 N. W. 2d 810.

August 29, 1975—No. 45253.

*Lommen & Cole* and *John P. Lommen,* for appellant.
*Casimir Cyptar,* for respondent.

Heard before Rogosheske, Todd, and Scott, JJ., and considered and decided by the court en banc.

Scott, Justice.

This is an appeal from an order of the Dakota County District Court denying a motion by defendant, Midland Cooperatives Inc., for judgment notwithstanding the verdict or a new trial, and from the judgment entered in favor of plaintiff. In an action for money damages based upon the alleged negligence of defendant in the delivery of fuel oil to plaintiff, Robert C. Larson, the jury found that plaintiff was not negligent, and that the negligence of defendant on two separate occasions was a direct cause of damage of plaintiff's property. Damages were awarded to plaintiff in the amount of $96,494.47, together with costs and disbursements. We affirm.

Plaintiff is the owner of property upon which are constructed his home and several greenhouses used in the operation of his nursery and floral business. Defendant is engaged in the business of selling and distributing fuel oil to customers living primarily in Dakota County.

On January 22, 1972, defendant filled one of two fuel storage tanks which service the greenhouses. Access to the tank is through a manhole covered by a steel lid. There is evidence that the driver left the area while the tank was being filled causing an overfill, and that excess oil seeped through a window into an adjoining boiler room. There is additional evidence that the overspill caused damage to a number of seedlings germinating in trays within the boiler room.

On February 5, 1972, defendant again delivered oil to plaintiff. A malfunction in the coupling unit of one of the hoses caused considerable oil to again spill over the property. A dispute exists re-

garding the amount of oil which escaped with defendant estimating approximately 262 gallons and plaintiff claiming almost 900 gallons.

The oil spill produced a strong odor and, following the melting of snow in the spring, an oily film over the resulting puddles. This oily water then apparently ran through and under the greenhouses causing damage to the soil and greenery planted within. The outside soil and paved driveways abutting the residence and greenhouses were also contaminated by the oil.

Several specialists testified regarding the effect of the oil upon the property and the amount of damages sustained as a result of the two separate spills. Substantial evidence leads to the conclusion that the presence of oil in plant soil is deleterious to growth and existence of plant life. Further testimony indicates that if oil is found, it is often necessary to excavate the soil to varying depths and replace it with undamaged soil. However, testimony differed as to the extent of excavation and replacement necessary to accomplish this remedial result.

At the trial a number of witnesses testified that plaintiff suffered considerable property damage. Damage to plants, determined by a factual breakdown of the effect upon each particular species, was estimated at approximately $38,625. Further, there was evidence that the resulting reduction in the value of the realty amounted to between $58,900 and $60,000.

Soil samples taken from the damaged premises were introduced into evidence for use by various expert witnesses in explaining their testimony. Counsel for defendant requested that these soil samples be submitted to the jury for examination in connection with its assessment of the permanency of the spillage and any resulting damages. The court denied this request.

The jury determined that plaintiff was not negligent; that defendant, through its agents or employees, was 100 percent causally negligent on January 22, 1972, and the resulting damages amounted to $1,200. The jury further found that the defendant was 100 percent causally negligent on February 5, 1972, and the

resulting damages amounted to $96,494.47. Pursuant to the court's order, judgment was entered in the amount of $96,494.47, together with costs and disbursements.

■ The defendant initially contends that it was prejudicial error to refuse to allow the jury to examine what it claims are representative soil samples from the premises. Such a contention is based upon its conclusion that since the court allowed both lay and expert witnesses to testify regarding the sensorial presence of oil in the soil, the jury, too, should have been allowed an opportunity to exercise independent judgment.

This court has often held that the withholding of exhibits from the jury is a matter within the sound discretion of the trial court. Pakul v. Montgomery Ward Co. 282 Minn. 360, 166 N. W. 2d 65 (1969). In addition, it is necessary that the party seeking admission of exhibits as evidence, particularly with reference to the peculiar nature of soil samples, lay a proper foundation that the samples fairly represent and are in the same condition as the whole. Intlehouse v. Rose, 153 N. W. 2d 810 (N. D. 1967). Such a discretionary determination by the court will be sustained unless clear abuse is shown. Faber v. Roelofs, 298 Minn. 16, 212 N. W. 2d 856 (1973); State v. Johnson, 291 Minn. 407, 192 N. W. 2d 87 (1971).

The trial court considered the foundation of the soil samples and the possible effect upon the jury's deliberation. Such consideration and subsequent determination not to allow their examination in the jury room is proper in light of their initial limited admission for explanatory use by expert witnesses and the confirming testimony regarding the state of the soil. The testimony of various witnesses indicates considerable conflict regarding the permanency of the damage caused by the oil leak. The trial court instructed the jury on pertinent portions of the exhibit and may have concluded that the exhibit was so confusing as to preclude admission for other than explanatory purposes by expert witnesses. Therefore, the determination of the trial court refusing to allow further examination of the soil samples

by the jury was proper, and no clear abuse of discretion has been shown.

■ Defendant next claims that the conduct of plaintiff's counsel was so improper as to necessitate a new trial. During final argument, counsel for plaintiff made the following allegedly improper comment:

"* * * When I was assembling my thoughts this morning, I was somewhat hesitant about making my final statement, but I think it should be said, in my opinion, in my judgment, I believe that the defendant in this case, the big Midland Oil Company, doesn't think for one minute that a jury from Dakota County where some people come from smaller communities, that they would ever think in terms of $96,152.00."

The standards by which this court determines whether a remark is improper and prejudicial have been set forth in Eklund v. Lund, 301 Minn. 359, 222 N. W. 2d 348 (1974). There we concluded that misconduct of counsel does not warrant a new trial unless it clearly resulted in prejudice to the losing party.

We conclude that no prejudice resulted from the remarks of counsel so as to mandate a new trial.

■ Defendant finally asserts that the damages were excessive, relying upon this court's reasoning in State v. Gannons, 275 Minn. 14, 145 N. W. 2d 321 (1966), to the effect that where the foundation for qualifying an expert is unreliable, the opinion is unsound, and a verdict based on it cannot stand.

Testimony of witnesses with experience in the field of horticulture and the nursery business is challenged as being that of lay persons. However, this court has concluded that persons with knowledge and vast experience within a particular field may be qualified as expert witnesses. Kastner v. Wernerskirschen, 295 Minn. 391, 205 N. W. 2d 336 (1973).

Consideration of the foundation in the record regarding the extensive occupational experience of those testifying as experts

leads to the conclusion that this contention is without merit, and the verdict must stand.

The judgment of the district court is therefore affirmed in all respects.

Affirmed.