Joseph GROSS, Respondent,

v.

VICTORIA STATION FARMS, INC., petitioner, Appellant.

No. C4–97–477.

Supreme Court of Minnesota.

June 4, 1998.

Katherine C. Bloomquist, Bloomquist Law Firm, P.A., Chaska, for Appellant.

John F. Stockman, Jensen, Stockman & Fiskum, Bloomington, for Respondent.

## OPINION

GILBERT, Justice.

On this appeal, we review the lower courts' rulings on the necessity of expert opinion testimony on the causation of equine lameness and the admissibility of a proposed expert's opinion. Respondent Joseph Gross commenced an action against appellant Victoria Station Farms for injuries to Gross's horse, Traffic Secretary, that allegedly occurred while Traffic Secretary was boarded at Victoria Station. Victoria Station filed a motion for summary judgment, arguing that Gross had submitted no evidence that Victoria Station's actions were the proximate cause of Traffic Secretary's injuries. Gross then filed an affidavit from D.K. Bennett,

Ph.D. in which Bennett claimed that Victoria Station's actions did cause Traffic Secretary's injuries. In granting summary judgment for Victoria Station, the district court ruled that expert evidence on causation was required but that Bennett's opinion was inadmissible because she was not a competent expert. Gross appealed to the court of appeals, which agreed that Gross had to submit expert evidence of causation but reversed the grant of summary judgment, concluding that Bennett was a competent expert witness. We affirm the requirement of expert testimony, but reverse the portion of the court of appeals decision overturning the district court's exclusion of Bennett's opinion. Therefore, we reinstate summary judgment for Victoria Station.

Joseph Gross purchased Traffic Secretary, great grandson of the famous racehorse Secretariat, when Traffic Secretary was only two years old. Initially, Gross was going to train Traffic Secretary as a racehorse. Unfortunately, Traffic Secretary suffered a tendon injury, and Gross decided not to pursue a racing career for his horse, but instead decided to turn Traffic Secretary into a dressage horse.[1] Later, Gross moved Traffic Secretary to Victoria Station Farms, a boarding facility just west of Stillwater.

In November 1993, a Victoria Station employee took Traffic Secretary to an outdoor exercise paddock. Somehow, Traffic Secretary escaped from the paddock and was discovered running alongside the highway near the paddock fence. In an effort to capture the horse, one of Victoria Station's employees threw a rope around Traffic Secretary's neck. A witness described that the horse tried to turn around as the employee jerked on the rope; the employee pulled the rope harder and the horse fell to the ground. The witness, Gross's agent, then saw blood on the pavement and yelled for someone to call the veterinarian. A veterinarian arrived, stitched Traffic Secretary's left hind leg, wrapped it, and left medication for him. Traffic Secretary was then put on stall rest. Two weeks later, Traffic Secretary restarted training. In January 1994, Traffic Secretary was examined for a splint injury, and, on a number of occasions over the next year and a half, Traffic Secretary was diagnosed with right forelimb lameness.

On June 10, 1995, Gross commenced an action against Victoria Station, alleging that it had committed breach of contract, conversion, ordinary negligence, and gross negligence based on the accident that occurred at the boarding facility. Gross alleged that Victoria Station's actions on the day that Traffic Secretary escaped from his exercise paddock caused Traffic Secretary's injuries that prevent him from being a successful performance horse.

Discovery revealed, however, that Traffic Secretary had a long history of chronic lameness before the November 1993 accident. In 1987, the University of Minnesota Large Animal Hospital diagnosed Traffic Secretary with chronic right forelimb lameness. Surgery was performed on his right forelimb in 1987, yet he was lame on his right forelimb again in November 1992. He had also exhibited lameness on his left forelimb in October 1992.

Victoria Station moved for summary judgment, arguing that "as a matter of law, the evidence shows conclusively that [Victoria Station's] actions are not the proximate cause of [Gross's] damages." Victoria Station attached several affidavits to the motion, including three from veterinarians. Dr. Terry Arnesen and Dr. Ann Bower who had treated Traffic Secretary immediately after the November 1993 accident both submitted affidavits describing their treatment of Traffic Secretary and stating that they saw no signs of lameness or a splint injury. Dr. Tracy Turner's affidavit stated that she had examined Traffic Secretary on July 31, 1996 when Gross brought the horse in for lameness and assessment of the splint bone. Dr. Turner examined Traffic Secretary and his medical records and concluded that Traffic Secretary's lameness was due to pain in his foot and did not result from the November 1993 accident at Victoria Station. Dr. Turner stated that,

---

1. Dressage is the "guiding of a horse through a series of complex maneuvers by slight movements of the hands, legs, and weight." *The*

*American Heritage Dictionary of the English Language* 398 (1982).

Traffic Secretary's chronic right front lameness is due to a chronic foot problem. This foot problem is not in any way related, or was it aggravated, by the injury that occurred [in November 1993]. If the horse did in fact experience a splint injury to the right forelimb [in November 1993], it is not, and would not be the cause of the foot problem. To the contrary, conformation problems, and shoeing problems, can lead to injury or aggravation of the splint area. Dr. Turner further concluded that the lateral splint was completely healed. Victoria Station also submitted a transcript of Dr. Voller's deposition. Dr. Voller, who treated Traffic Secretary for splint injuries in January 1994 and June 1995, testified to Traffic Secretary's extensive prior history of chronic lameness and stated that the splint injury he diagnosed "is not a particular reason for why that horse would not be able to compete at the preliminary level."

At the summary judgment hearing, the district court noted that Victoria Station had produced evidence from four experts showing a lack of medical causation, while Gross had not produced evidence from any experts. The court allowed Gross to submit a supplemental brief addressing whether expert testimony was necessary. Gross submitted such a brief along with an affidavit from Bennett. Bennett is not a veterinarian, but has an M.S. in geology and a Ph.D. in biology/systematics and ecology (vertebrate paleontology). She also owned a horse who had an ailment similar to Traffic Secretary's. Bennett has published many articles on horses but has not published any articles dealing specifically with equine lameness diagnosis. In 1992, Bennett founded the Equine Studies Institute "to promote higher education in horsemanship through attention to the nature and the needs of horses" and currently serves as its director. She is also a researcher for ANTS, Inc., a scientific toy-making company.

In preparing her affidavit, Bennett reviewed the other experts' affidavits, portions of deposition transcripts, and some of Traffic Secretary's medical records from 1989 through 1996. Bennett stated that she has dedicated herself to the study of horses, specifically the study of their anatomy, paleontology, and biomechanics. Bennett concluded "to a reasonable degree of scientific certainty that the present lameness of Traffic Secretary is traceable to an injury that occurred to the right forelimb [in November 1993]." In an attachment, Bennett explained that numerous failures by veterinary personnel and trainers had contributed to Traffic Secretary's present lameness, but that the November 1993 accident was "the proximate cause [of the lameness]—the straw that breaks the camel's back."

Because causation of equine lameness is not an issue of common knowledge, the district court concluded that expert testimony on causation was necessary. But the court concluded that Bennett's opinion was inadmissible because she only has degrees in geology and paleontology and has never practiced in the field of equine lameness diagnosis. Because the court found that Gross had presented no medical evidence that Victoria Station's conduct caused Traffic Secretary's lameness, the court granted summary judgment to Victoria Station.

Gross appealed. The court of appeals affirmed the district court's requirement of expert opinion on the causation of Traffic Secretary's lameness. But the court of appeals, in a two to one decision, reversed the district court on the admissibility of the proposed expert opinion, finding that Bennett was competent to present her opinion because "she has knowledge in the subject area qualifying her as an expert." Victoria Station now appeals to this court, arguing that Bennett was not competent to render an opinion on medical causation, that her statements are based on an inadequate factual foundation and pure speculation, and that summary judgment is appropriate because Gross did not present any medical evidence establishing causation.

I.

■■■■ A district court's evidentiary ruling on the admissibility of an expert opinion rests within the sound discretion of the trial court and will not be reversed unless it is based on an erroneous view of the law or it is an abuse of discretion. *Benson v. Northern Gopher Enters., Inc.*, 455 N.W.2d 444, 445–46 (Minn.1990). The district court has "consid-

erable discretion in determining the sufficiency of foundation laid for expert opinion." *Reinhardt v. Colton*, 337 N.W.2d 88, 92 n. 1 (Minn.1983). Even if evidence has probative value, it is still within the district court's discretion to exclude the testimony. *Benson*, 455 N.W.2d at 446. This is a very deferential standard. In fact, we have stated that "[e]ven if this court would have reached a different conclusion as to the sufficiency of the foundation, the decision of the [district court] judge will not be reversed absent clear abuse of discretion." *Id.*

■ Expert opinion is admissible if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue" and the "witness [is] qualified as an expert by knowledge, skill, experience, training, or education." Minn. R. Evid. 702. The knowledge requirement may be satisfied by either formal education or sufficient occupational experience. *Kastner v. Wermerskirschen*, 295 Minn. 391, 394, 205 N.W.2d 336, 338 (1973). The competency of an expert witness to provide a medical opinion depends upon both the degree of the witness's scientific knowledge and the extent of the witness's practical experience with the subject of the offered opinion. *Reinhardt*, 337 N.W.2d at 93.

■ The district court ruled that Bennett's opinion was inadmissible based on her lack of practical expertise in equine lameness:

> [Gross's] expert has degrees in geology and paleontology. She is currently a researcher for a scientific toy-making company and for a one-person education resource service. She has not practiced in the field of equine lameness diagnosis. This Court finds that based upon *Cornfeldt v. Tongen*, 262 N.W.2d 684, 692 (Minn.1977), [Gross's] expert is not competent to render an expert opinion on medical causation in this case. Therefore, her opinion is inadmissible.

In *Cornfeldt v. Tongen*, relied on by the district court, we held that an expert medical witness must have "both sufficient scientific knowledge of and some practical experience with the subject matter of the offered testimony." 262 N.W.2d 684, 692 (Minn.1977).

The court of appeals reviewed Bennett's credentials and determined that she was a qualified expert and thus reversed the district court's grant of summary judgment. In reviewing the district court decision in this way, however, the court of appeals erroneously applied de novo review and ignored the standard of review that allows reversal of evidentiary decisions only if there is an abuse of discretion.

We have previously applied a deferential standard of review to cases involving animal experts. *Kastner v. Wermerskirschen* involved the sale of chickens allegedly infected with a disease. 295 Minn. at 392, 205 N.W.2d at 337. The defendant's proffered expert testified that he was a "chicken hatchery operator and pullet raiser of 25 years' experience, a student at 15 to 20 diagnostic clinics and lectures by veterinarians schooled in chicken diseases, and a performer of chicken autopsies covering several years, and that he had read literature in the field of chicken diseases." *Id.* at 393, 205 N.W.2d at 338. Because animal care is often in the hands of lay people, "a lower standard of qualification [applies] to witnesses giving opinion testimony on such matters than is generally applied to expert witnesses offering testimony as to the diseases and ailments of humans." *Id.* at 394–95, 205 N.W.2d at 338–39. We based this decision on precedent holding that a "formal education in animal diseases is not necessary to qualify a witness as an expert." *Id.* at 395, 205 N.W.2d at 339. Yet, this precedent does "not hold that a so-called lay expert witness who is qualified to diagnose the presence of an animal disease necessarily qualifies also as an expert in the causation and onset of that animal disease." *Id.* We therefore held that the district court did not abuse its discretion when it concluded that the expert was not qualified to offer an opinion as to the cause and onset of the chicken disease. *Id.*

■ The case now before us is remarkably similar to *Kastner*. Bennett has an extensive amount of experience with horses, but the record does not support that she has the necessary qualifications to meet the higher standard required to offer her opinion on the causation and onset of Traffic Secretary's

current lameness. The lengthy medical history of Traffic Secretary's lameness before the November 1993 accident underscores the complex nature of Traffic Secretary's current lameness and the need for competent expert opinions on the causation of such lameness. The record indicates that Bennett had no experience in diagnosing equine lameness. Her background does not include any veterinary science studies, and her work and research has focused only on horse evolution and conformation rather than equine lameness diagnosis. Moreover, because we apply a deferential standard to evidentiary rulings, we cannot say that the district court abused its discretion in excluding Bennett's opinion. Because we conclude that the trial court did not abuse its discretion when it excluded Bennett's opinion, we reverse the court of appeals on this issue.

## II.

Without Bennett's opinion, Gross has offered no evidence that Victoria Station's actions caused Traffic Secretary's injuries. Expert opinion is required to prove causation if the issue is outside the realm of common knowledge:

> Where a question involves obscure and abstruse medical factors such that the ordinary layman cannot reasonably possess well-founded knowledge of the matter and could only indulge in speculation in making a finding, there must be expert testimony, based upon an adequate factual foundation that the thing alleged to have caused the result not only might have caused it but in fact did cause it.

*Bernloehr v. Central Livestock Order Buying Co.*, 296 Minn. 222, 225, 208 N.W.2d 753, 755 (1973). The ordinary layperson is not versed in horse lameness or horse anatomy and therefore could not decide whether the November 1993 accident caused Traffic Secretary's current lameness. Expert testimony on causation was required before Gross could recover damages on his claims for negligence, breach of contract, and conversion. We affirm that part of the court of appeals decision requiring Gross to submit expert testimony on causation. Because the district court did not abuse its discretion in excluding Bennett's opinion and Gross offered no evidence of causation, we conclude that summary judgment for Victoria Station was appropriate. Accordingly, we reinstate the district court's grant of summary judgment for Victoria Station.

Affirmed in part, reversed in part.